[No. 8161.   Department One.   December 10, 1909.]

HELGA HELLIESEN, *Respondent*, v. SEATTLE ELECTRIC
COMPANY, *Appellant*.[1]

STREET RAILROADS—CROSSINGS—CONTRIBUTORY NEGLIGENCE OF PED-
ESTRIAN—DUTY TO LOOK AND LISTEN.   A pedestrian, struck at a
crossing by a well lighted street car, at night, is guilty of contribu-
tory negligence, as a matter of law, although she testified that she
looked east just a moment before stepping on the track and saw no
car and heard no bell, where it appears that had she looked as she
said she did she must have seen a lighted car about forty feet east
of the crossing, approaching at ten miles an hour; since the rule
that one need not stop, look and listen before crossing a street car
track does not permit one to heedlessly and carelessly cross the
track; the rights of the parties being equal.

SAME.   In such case the test is, did the pedestrian use ordinary
care, and the circumstances may be so conclusive as to make failure
to look and listen, or such inattention as to know nothing of an
approaching car, contributory negligence as a matter of law.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered February 2, 1909, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by a pedestrian struck
by a street car.   Reversed.

*James B. Howe* and *Hugh A. Tait*, for appellant.

*Martin J. Lund* (*Vince H. Faben*, of counsel), for respond-
ent.

MORRIS, J.—On September 17, 1907, the respondent left
the place where she was temporarily employed, to go to her
home on the corner of Pine street and Bellevue avenue, Seat-
tle.   She walked west on the north side of Pine street, until
she came to Bellevue avenue.   When she reached the east side
of Bellevue avenue, she saw two cars, one headed east and the

[1]Reported in 105 Pac. 458.

other west on the west side of Bellevue, which it appears was the usual stopping place for cars at that street intersection. She was then living on the southwest corner of these two streets, and thinking she had time to cross the track, before the east-bound car reached the east crossing, she started to cross Pine on the east side of Bellevue.

At the time she reached the crossing, it was dark, about 7:30 p. m., and after seeing the situation of the two cars on the west side of the crossing, she says she started across and when, using her own language, "a little out from the crossing," she looked east on Pine and seeing no car, went on. She had one foot over the first rail, when she saw a car approaching from the east. She says she only had time to withdraw her foot when the car struck her upon her left shoulder, throwing her to the sidewalk and inflicting the injuries complained of. In fixing the time she looked east with reference to the time she started to cross, she says "it was just a short time before I crossed;" "I know it was before but I cannot tell how long;" "I could not say any time; it was just a moment before I went over." Another answer was, "I can say it was better than a moment before."

The negligence complained of was failure to ring the bell, and she testified that no bell was rung. The testimony of other witnesses upon this point was given by two passengers on the car and the motorman. One passenger, Jones, testified: "I couldn't say that it did ring or that it didn't ring." The other passenger, Pickford, says the bell was rung three or four times between Summit (one block east) and Bellevue, and that the bell was rung within a car length of the crossing. The motorman testified that he rang the bell three or four times between Summit and Bellevue, and once or twice just before striking respondent. He also testified he did not see the respondent until she stepped out from the shade of a tree and stepped onto the track. This tree was shown to be set about twelve feet east from the crossing, and its foliage was from fifteen to eighteen feet in diameter. It

was also shown that there was an arc light hanging nearest to the northeast corner of the crossing; that between Summit and Bellevue the car was running on a down grade of 7.3 per cent, at eight or ten miles an hour, and that from the curb, where respondent started to cross the street, it was ten feet to the first rail, over which she placed her foot before she saw the car. The verdict was in favor of respondent, and the court denying appellant's motion for judgment notwithstanding the verdict, this appeal is taken, and this ruling and others involving the same point are assigned as error. It is apparent that the only question involved in the appeal is, Was respondent guilty of such contributory negligence as to preclude her recovery?

Respondent had lived on the southwest corner of this crossing for about eight months, and was familiar with the fact that a number of different car lines ran over these tracks, and that cars passed there frequently in both directions. She approached this crossing, then, well knowing the situation, and she was bound to use such a degree of care as an ordinary, prudent person having such knowledge of the situation would use under like circumstances. If she had done so, the conclusion is irresistible she would not have been injured. She says she looked a moment before she started across, but saw nothing and heard nothing; yet it is shown by an engineer familiar with the crossing that, taking the speed of the car at ten miles an hour, her speed at two and one-half miles an hour, and the distance from the place where she said she looked east to the track at ten feet, the car was then forty-two feet east of the crossing.

We cannot understand how one looking for a car can fail to see a lighted car with its headlight throwing on the track ahead of it, and only forty-two feet away. The physical facts of the situation are a unit in showing respondent could not have used ordinary care in attempting the crossing. If she looked she must have seen the car, or else she gave such an indifferent and casual glance as was of no value to her in

determining whether or not a car was approaching. In either event, she was not using ordinary care. The car was there with its lights burning, and such a look as would be given by an ordinary, prudent person would have located it. Pedestrians in crossing the tracks of a street railway in the daytime or in the nighttime, knowing as respondent knew that the crossing was one where cars frequently passed, must use their senses to apprise them of danger, if any; they cannot heedlessly and carelessly cross the track, and throw the entire burden of their safety upon the motorman of any approaching car. The rights of the pedestrian and that of the street railway are equal. Their duties are reciprocal. Neither has the exclusive right of way; each must have due regard to the rights of the other.

It is urged by respondent that, if it should appear that she attempted the crossing without looking and without listening, such failure is not contributory negligence in law; citing *Roberts v. Spokane St. R. Co.*, 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184, and other cases from this court in which it is held that failure to look and listen before crossing the tracks of an electric railway in a public street where the cars have not the exclusive right of way, is not negligence *per se*. Such is undoubtedly the rule here, but such a rule does not mean that one can heedlessly and carelessly cross the track without using his senses for his protection; nor does it mean that those who have eyes to see but see not and ears to hear but hear not, are exercising due care. In determining the question of contributory negligence, due care or ordinary prudence is the only known test. What would be due care under certain circumstances would not be due care under other and different circumstances; and in determining this question this court has refused to predicate its answer alone upon the fact that it did not appear that the person about to cross the track looked or listened, and say such failure of itself alone constitutes negligence in law. Other facts existing and present and affecting the situation

must be given their due weight in determining the question of contributory negligence. In other words, it is not alone, Did the pedestrian look and listen? and upon answering that question in the negative, say it is negligence *per se,* and there can be no recovery. But the test is, did the pedestrian, under all the circumstances, use such a degree of care, caution, and prudence as an ordinary, prudent and careful pedestrian would use under like circumstances; and in answering such test, this court has in a number of cases held that the failure to look and listen was a fact to be considered in determining whether or no there was contributory negligence as a matter of law. *Skinner v. Tacoma R. & Power Co.,* 46 Wash. 122, 89 Pac. 488; *Mey v. Seattle Elec. Co.,* 47 Wash. 497, 92 Pac. 283; *Dimuria v. Seattle Transfer Co.,* 50 Wash. 633, 97 Pac. 657. The same rule has been applied to the drivers of wagons in crossing the track. *Christensen v. Union Trunk Line,* 6 Wash. 75, 32 Pac. 1018; *Criss v. Seattle Elec. Co.,* 38 Wash. 320, 80 Pac. 525; *Coats v. Seattle Elec. Co.,* 39 Wash. 386, 81 Pac. 830; *Davis v. Coeur d'Alene & Spokane R. Co.,* 47 Wash. 301, 91 Pac. 839; *Helber v. Spokane St. R. Co.,* 22 Wash. 319, 61 Pac. 40. The *Roberts* case cites as authority for the rule therein announced: *Robbins v. Springfield St. R. Co.,* 165 Mass. 30, 42 N. E. 334, and *Shea v. St. Paul City R. Co.,* 50 Minn. 395, 52 N. W. 902. An examination of the Massachusetts and Minnesota cases will show that the announcement of such a rule was never intended to be construed as a holding that failure to look and listen was not a circumstance to be considered in determining the question of contributory negligence as a matter of law. We refer to a number of such cases subsequent to the *Robbins* case.

In *Hall v. West End St. R. Co.,* 168 Mass. 461, 47 N. E. 124, the holding is, to cross a street railway track "in such a state of inattention as to know nothing of the approach of a car until struck shows want of ordinary care." In *Kelley v. Wakefield & S. St. R. Co.,* 175 Mass. 331, 56 N. E. 285, it is

said, there is no absolute rule of law requiring a traveler to look and listen, but if it appears that the plaintiff's conduct was negligent and that such negligence contributed to the injury, it is the duty of the court to direct a verdict for defendant. In *Hurley v. West End St. R. Co.*, 180 Mass. 370, 62 N. E. 263, the ruling is, where plaintiff in the daytime drove across the tracks of a street railway on which he knew electric cars were running, without looking, he was not in the exercise of due care. In *Itzkowitz v. Boston Elevated R. Co.*, 186 Mass. 142, 71 N. E. 298, it is held that if, in the exercise of due care, plaintiff could not fail to see that he was close to the track and that a car might be expected to pass over it at any moment, he was not justified in stepping upon the track, when he could not fail to see the car, without shutting his eyes, and when it would seem as if he should have heard it. In *Dunn v. Old Colony St. R. Co.*, 186 Mass. 316, 71 N. E. 557, the court says: "There was nothing to prevent the drivers seeing the car, had he looked at any time after he was fifty or sixty feet away," and a recovery was denied. In *Quinn v. Boston El. R. Co.*, 188 Mass. 473, 74 N. E. 687, it appeared that the plaintiff was stooping near the track and could have seen the car had he looked, and could have heard it had he listened. His failure so to look and listen was held to be contributory negligence. In *Blackwell v. Old Colony St. R. Co.*, 193 Mass. 222, 79 N. E. 335, the opinion reads, "from the time he left the sidewalk until he was struck, it is not shown that he had either looked or listened for a car . . . he must have known of the near presence of the moving car had he taken any precaution whatever to ascertain," and such failure is held to be contributory negligence. In *Saltman v. Boston Elevated R. Co.*, 187 Mass. 243, 72 N. E. 950, the plaintiff was held guilty of contributory negligence in driving upon the track when he could not use his sight for his protection nor depend upon his sense of hearing. See, also, *Donovan v. Lynn & B. R. Co.*, 185 Mass. 533, 70 N. E. 1029, and *Fitzgerald v. Boston Elevated R. Co.*, 194

Mass. 242, 80 N. E. 224.   The Minnesota cases subsequent
to *Shea v. St. Paul City R. Co., supra*, announce a like rule.
In *Terien v. St. Paul City R. Co.*, 70 Minn. 532, 73 N. W.
412, the syllabus by the court reads:

"Whether a pedestrian is guilty of contributory negligence
in failing to look and listen before attempting to cross the
track of a street railway is, as a general rule, a question of
fact for the jury, to be determined from all the circumstances
of the particular case; but the circumstances may be such,
and the evidence as to those circumstances so conclusive, that
the court should say, as a question of law, that he was guilty
of contributory negligence in failing to look and listen;"
citing, *Hickey v. St. Paul City R. Co.*, 60 Minn. 119, 61
N. W. 893, where it was held, as a question of law, that the
plaintiff therein was guilty of contributory negligence in
failing to look and listen before crossing the street railway
track.

In *Russell v. Minneapolis St. R. Co.*, 83 Minn. 304, 86
N. W. 346, the court thus states the rule:

"It is not, as a matter of law, negligence for a pedestrian
to cross a street railway track (at least, within the populous
part of the city) without looking and listening for an ap-
proaching car.   Whether the failure to look and listen be an
act of negligence must be determined from all the circum-
stances of each particular case, guided by the rule of ordi-
nary care and prudence.   If a person by the exercise of such
care could have discovered an approaching car and avoided
the accident and he failed to do so, he cannot recover.   So the
question in every case is one of ordinary care.   Failure to
look and listen might be conclusive, or at least very strong,
evidence of negligence in one case, and in another of no par-
ticular controlling force at all."

Referring to the facts in the case before it, the court con-
tinues:

"A glance of the eye to the left would have informed her
of the approach of the car, but she says she neither heard
nor saw it.   Clearly, from her undisputed evidence, reason-
able minds can arrive at but one conclusion, and that to the

effect that her own indifferent and careless conduct was the cause of the injuries she received."

Such language might well be written upon a review of the facts in the case before us.

The latest kindred expression from this court may be found in *Keefe v. Seattle Elec. Co.*, 55 Wash. 448, 104 Pac. 774, wherein it is said:

"The facts speak the law in each case, and it does not follow from what we have said that a person has a right to go blindly upon a track when a car is so near that his attempt must necessarily result in a scramble for the right of way."

Cases might be multiplied holding a like rule. We have, however, confined our citations to those states following which this court first pronounced the rule in the *Roberts* case, and our purpose in doing so is to make clear that this rule in the *Roberts* case does not announce a rule of conduct that may be used as a measuring stick in all cases irrespective of the facts, which must alone determine its proper announcement.

In the present case, it conclusively appears to us that, if the respondent looked as she says she did, she must have seen the car then only forty-two feet away. If she did not look, under all the attendant circumstances, she was not using due and ordinary care. In either case she was guilty of contributory negligence, and she cannot recover.

The judgment is reversed and the cause remanded for dismissal.

Rudkin, C. J., and Chadwick, J., concur.

Gose, J. (concurring)—There is a photograph in the record, the accuracy of which is not disputed, which shows that the car which struck the respondent could be plainly seen from the place where the accident occurred, for a distance of about five hundred feet. There must of necessity be reciprocal duties upon the pedestrian and the street railway company. The track itself is a danger signal, and the pedestrian cannot be absolved from using the care which ordinary pru-

dence demands.   Under the circumstances admittedly present in this case, the act of the respondent in starting to cross the track was gross negligence.   The verdict of a jury will not be permitted to control physical facts.   In concurring I assume that there was competent evidence from which the jury might find that the motorman did not ring the bell after leaving Summit avenue, but it does not follow that the respondent could step in front of a well-lighted, moving car so near her that she could not withdraw her foot in time to avoid being struck by it, without being guilty of such negligence as to preclude a recovery.   If she can recover in this case, a right of recovery could not be denied her if she had been a second later and had been injured in colliding with the body of the car.

Fullerton, J. (dissenting)—Whether the street car bell was rung by the motorman just prior to the time the car struck the respondent, and whether the respondent was guilty of contributory negligence, were disputed questions of fact, on which, in my opinion, there was evidence sufficient to support a verdict for either party.   The questions, therefore, were for the jury, and this court should abide by the jury's determination thereof.