HELEN F. FAIRBANKS, Admx.

*vs.*

BANGOR, ORONO & OLDTOWN RAILWAY COMPANY.

Penobscot.    Opinion February 25, 1901.

*Street Railways.    Way.    Negligence.    Travelers.*

There is no absolute rule of law that a person riding along a street must look and listen for an approaching car before entering upon the track of an electric railway. Whether his failure to look or listen amounts to negligence must be determined from all the facts and circumstances proved.

The defendant is the owner and operator of an electric street railway, its track running along Central street in Bangor at a grade of nine feet in the hundred. The plaintiff's intestate was the proprietor of a store on the southerly side of Central street.

On the morning when he met with the accident which caused his death, he was driving down the northerly side of that street seated in an open delivery wagon, his horse at a walk. When nearly opposite his store he turned to cross the defendant's track in front of a car approaching on the down grade. As he turned, he had an unobstructed view of the track, and had he looked he could not have failed to see the approaching car.

He continued to walk his horse across the track until the front end of the car struck his near hind-wheel, by the force of which he was thrown from his seat and fatally injured. The testimony convinces the court that there was no negligence on the part of the defendant's servants and that the intestate met with the injuries which caused his death solely by reason of his own negligence, and that the verdict for the plaintiff was manifestly wrong.

On motion by defendant.    Motion sustained.

This was an action at common law by the plaintiff, as administratrix of the estate of Jesse A. Fairbanks, to recover damages for the death of her intestate caused by a collision September 17, 1898, with one of the cars of the defendant company on Central street in the city of Bangor. The accident took place about 6.30 A. M., at the foot of the steep down grade on the street northerly of Norombega Hall and about one hundred feet below the intersection of Harlow and Central streets. The case was tried at the January term, 1900, and a verdict rendered for the plaintiff for $5200.

*F. J. Martin and H. M. Cook*, for plaintiff.

Counsel cited: *Atwood* v. *B. O. & O. Ry. Co.*, 91 Maine, 399; *Kilbane* v. *Winchester Elec. R. R. Co.*, 43 N. Y. Sup. Ct. 278; *Whitehouse* v. *G. T. Ry.* 2 Hask. p. 189; *Calumet Elec. St. Ry. Co.* v. *Christenson*, 170 Ill. 382; *S. C.* 3 Am. Neg. Rep. 537; *Meisch* v. *Rochester Elec. R. R.*, 72 Hun, 604; *Sears* v. *Seattle St. Ry. Co.*, 6 Wash. 277; *S. C.* 33 Pac. Rep. 389, 1081; *White* v. *Worcester St. Ry. Co.*, 167 Mass. 43; *Benjamin* v. *Holyoke St. Ry. Co.*, 160 Mass. 3; *Montgomery* v. *R. R. Co.*, (Mich. Sup. Ct.) 5 Am. Elec. Cases, p. 471; *Thompson* v. *Holyoke St. Ry. Co.*, 170 Mass. 365.

*O. D. Baker, L. C. Stearns and E. C. Ryder*, with him, for defendant.

Plaintiff guilty of contributory negligence. His attempting to cross when and where he did was a negligent act. Rights of a traveler. crossing the track in front of a car approaching behind him are wholly different from those at a regular crossing. *O'Neil* v. *Dry Dock, etc., R. Co.*, 129 N. Y. 125. "A horse car can not be handled like a rapier" per Holmes, J., in *Hamilton* v. *West End St. Ry. Co.*, 163 Mass. 199; *Flewelling* v. *L. & A. H. R. R. Co.*, 89 Maine, 593; *Atwood* v. *B. O. & O. Ry. Co.*, 91 Maine, 402; note to *Western, etc., Co.* v. *Citizens St. R. R. Co.*, 128 Ind. 5215, reported in 25 Am. St. Rep. p. 477, and cases cited; *Driscoll* v. *Ry. Co.*, 97 Cal. 553; *De Lon* v. *Ry. Co.* (Ind. May, 1899) 55 N. E. Rep. 847. Many courts have held such failure to look or listen to be negligence in law after the analogy of steam railroad cases; *Sonnenfeld Co.* v. *Ry. Co.*, 59 Mo. App. 668; *Onslaer* v. *Ry. Co.*, 168 Pa. St. 518; *Smith* v. *Traction Co.*, 187 Pa. St. 110; *Doherty* v. *Ry.* (Mich. 1898) 7 N. W. 377; *Webster* v. *Ry.* (La. 1899) 25 So. Rep. 77; *Smith* v. *Ry.* 29 Ore. 539; *McGee* v. *Ry. Co.*, 102 Mich. 107; *Fritz* v. *Ry. Co.*, 105 Mich. 50. We submit it was negligence in fact. *Hayes* v. *Norcross*, 162 Mass. p. 548, and cases. Such sudden crossing is contributory negligence and defeats the action. *Thomas* v. *Ry.* 132 Pa. St. 504; *Carson* v. *Federal St. Ry. Co.*, 147 Pa. St. 219 (gross negligence);

*Ry. Co.* v. *Stammers*, (Ky. 1898) 47 S. W. Rep. 341; *Hall* v. *Ry. Co.*, 168 Mass. 461; *Borschall* v. *Ry.* 73 N. W. Rep. 551.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

FOGLER, J.   This is an action on the case, at common law, in which the plaintiff sues to recover damages for personal injuries sustained by her husband and intestate, Jesse A. Fairbanks, causing his death, through the alleged negligence of the servants of the defendant corporation.   The jury returned a verdict for the plaintiff in the sum of five thousand, two hundred dollars.   The defendant moves for a new trial on the grounds that the verdict is against law, against evidence and the weight of evidence, and that the damages awarded are excessive.

The defendant company is the owner and operator of an electric street railway running from Old Town into the city of Bangor, its tracks running along Central street from its junction with Harlow street, to Hammond street.   The plaintiff's intestate was the proprietor of a store on the southerly side of Central street.   At about half-past six o'clock on the morning of the seventeenth day of September, 1898, he was traveling along the northerly side of said street from its junction with Harlow street, towards his place of business on the southerly side of Central street.   He attempted to cross the railway track in front of one of the defendant's cars, approaching him from Harlow street. · The front end of the car struck the near hind-wheel of the wagon, causing it, or the seat, to tip, and the plaintiff's intestate was thereby thrown from the seat, his head striking the pavement and such injuries being thereby inflicted that he died by reason thereof, five days thereafter.

The defendant contends that the verdict should be set aside upon two grounds, namely; first, that the injuries to the plaintiff's intestate were occasioned by his own negligence; and secondly, that the defendant was guilty of no negligence.

We think that the motion should be sustained on both grounds.

Street railway companies have a right to use the streets upon which their tracks are placed.   Travelers on foot or with teams

have also the right to use such streets for purposes of travel. In the use of the street each must use ordinary care, and prudence. The rule in this respect is thus stated in *Atwood* v. *Bangor, etc., Ry. Co.,* 91 Maine, 402: "Highways are constructed and maintained for the accommodation of travelers, and not as places of resort for business negotiations or social converse. All travelers with teams have equal rights on the highway, but each must exercise his right in a reasonable manner and use the way with due regard to the rights of others. And since highways have been subjected to a new mode of use by the introduction of street railways, a still higher degree of attention, vigilance and prudence is requisite to fill the measure of ordinary care demanded of the traveler."

And in *Flewelling* v. *Lewiston and Auburn Horse Railroad,* 89 Maine, 593, it is stated: "Electric Street cars have, in a qualified way at least, the right of way as against persons on foot or traveling with carriages and teams in the same manner as ordinary steam railroads have. And all persons passing on foot or traveling by the common methods on the highways, should carefully observe the movements of the street cars and leave them an unobstructed passage as well as they reasonably can."

There is no absolute rule of law requiring a traveler to look and listen before crossing the track of an electric railway in a public highway. *Kelley* v. *Wakefield St. Ry.,* 175 Mass. 331; *Robbins* v. *Springfield St. Ry.,* 165 Mass. 30.

But he must do for his own safety what ordinarily careful persons are accustomed to do under like circumstances. *Hall* v. *West End Ry.,* 168 Mass. 461.

Whether a failure of a traveler about to cross an electric railway track, to look or listen, amounts to negligence must be determined from all the facts and circumstances proved.

Applying the law thus laid down to the case at bar, we think that the testimony introduced by the plaintiff proves gross negligence on the part of her intestate in attempting to cross the defendant's track in front of the approaching car. As his place of business was upon that street, he must have known that cars were

accustomed to run upon the track at a steep grade. The view from the point of collision to the junction of Harlow and Central streets was unobstructed. Without looking to see whether a car was approaching, and without any warning to the motorman of his intention, he turned to cross the track. When he turned, a slight glance up the track would have shown him the car approaching. The distance from the point where he turned to cross is differently stated by the plaintiff's witnesses. One witness testifies that when Mr. Fairbanks commenced to make the turn the car was coming round the curve from Harlow street, which would be a distance of about a hundred feet. Another witness for the plaintiff testifies that the car was eight or ten feet away when the team turned to cross the track. Assuming that the car was moving at the rate of six miles per hour, the maximum speed testified to by any witness, and continued that rate of speed till the moment of collision, and that the team was moving at the rate of three miles per hour, a mathematical calculation demonstrates that when the team started to cross the track, the front end of the car could have been distant from the team not more than thirty or thirty-five feet.

The plaintiff claims that the defendant was guilty of negligence, because, as she contends, the motorman did not sound his gong when he saw her intestate turn to cross the track, and made no effort to stop the car and thus avoid collision. One of her witnesses testified that he heard, or, at least, noticed, no sound of the gong until almost at the moment of collision. Two others testified that they did not hear, or did not notice, the sound of the gong at any time after Mr. Fairbanks made his turn to cross. Three witnesses for the plaintiff testify that they did not see, or did not notice, the motorman apply his brake, or make any effort to stop the car.

On the other hand, the motorman testifies that when he observed Mr. Fairbanks turn to cross the track he sounded his gong and continued to sound it until the collision occurred, and that at the same time, he applied his brake until his wheels ceased to revolve, and that on account of the steep downward grade of nine feet in the hundred and the slippery condition of the track, the

wheels did not take the iron but slid forward on the rails; that he then threw off his brake and reversed his power so that the wheels revolved backward, but the wheels continued to slide forward until the collision occurred.

In this the motorman is fully corroborated by the conductor and several other apparently disinterested eye-witnesses of the affair.

The motorman testified that at the time of the collision he had reduced his speed to three miles an hour.

We think that the weight of testimony on this branch of the case is strongly and convincingly in favor of the defendant.

We are of opinion that the plaintiff's intestate met with the injuries which caused his death solely by reason of his own negligent acts and that the verdict was manifestly wrong and must be set aside.

*Motion sustained.*