## UNION TRACTION COMPANY OF INDIANA *v.* MONEYHUN.

[No. 24,065. Filed June 27, 1922.]

1. STREET RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*—*Instructions.*—*Applicability.*—In an action by an automobile driver for injuries sustained in a collision with an interurban car at a street crossing, in which defendant was charged with negligently operating its car at an unlawful rate of speed and failing to give any warning of the approach of the car, an instruction based upon the presumption that a person is charged with having seen what he might have seen had he looked, and with having heard what he might have heard, had he listened, and in the event of injury, negligence is imputed to him, *held* properly refused. p. 293.

2. STREET RAILROADS.—*Use of Streets.*—*Rights at Street Intersections.*—A street railway company has no superior right to cross a street intersection in preference to individuals. p. 293.

3. STREET RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*—*"Stop, Look and Listen" Rule.*—The rule requiring one to look or listen, or both, and to stop in order to use these senses, before crossing the right of way of a steam railroad, does not govern the rights of pedestrians and drivers of vehicles about to cross street car tracks at a public street intersection, the duty of such persons not being different from the duty of the company, except that the street car is confined to its track. p. 293.

4. STREET RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*— *Instructions.*— *Applicability.*— In an action for injuries in a crossing accident, where plaintiff looked in both directions before proceeding to drive across defendant street car company's single track at a street intersection and was struck by a car running at an unlawful rate of speed without any warning of its approach, an instruction that ordinary care of a person approaching a railroad track is such care as an ordinary person of prudence exercises under the circum-

Union Traction Co. *v.* Moneyhun—192 Ind. 288.

stances of danger to be apprehended, that the greater the danger the higher the degree of care that is required to constitute ordinary care, and the absence of such degree of care, whether there is any danger by obstruction or otherwise, is negligence, *held* properly refused as inapplicable to the facts, and misleading as to degrees of care. p. 295.

5. STREET RAILROADS.—*Crossing Accidents.—Contributory Negligence.—Instructions.—"Stop, Look and Listen" Rule.*—In an action against a street railroad company by a driver of an automobile for personal injuries sustained in a collision with a car at a street intersection, an instruction stating that the driver of an automobile is not required to stop, look, and listen before crossing a street railway track within a city, *held* not reversible error. p. 295.

6. STREET RAILROADS.—*Crossing Accidents.—Contributory Negligence.—Instructions.—Duty of Automobile Driver to Stop.*—In an action against a street railroad company by the driver of an automobile for injuries sustained in a collision with a car at a street intersection, an instruction that plaintiff was not bound to look for approaching cars at a special given place, was not erroneous, since no legal rule can be established fixing the place at which a person approaching a track should look for cars; the duty of a person so situated being to exercise ordinary care and prudence commensurate with all the circumstances. p. 295.

7. STREET RAILROADS.—*Crossing Accidents.—Contributory Negligence.—Instructions.—"Stop, Look and Listen" Rule.*—In an action against a street railroad company by the driver of an automobile for injuries received in a crossing accident, an instruction that a traveler approaching a street railway track, at a crossing of public streets of a city, is not bound to stop, look or listen for the approach of cars, which was qualified by the statement that he is bound to exercise ordinary care under the circumstances for his own safety and to make reasonable use of his senses of sight and hearing in detecting such dangers as are incident to the use of the streets and street car tracks, *held* correct, though the statement as to the duty to stop, look or listen, was, if unqualified, objectionable. p. 297.

8. STREET RAILROADS.—*"Stop, Look and Listen" Rule.—Applicability.*—The absolute stop, look and listen rule, as formerly applied to a public highway crossing with a steam railway, does not apply to street railway crossings in cities. p. 299.

From Madison Circuit Court; *Luther E. Pence,* Judge.

Action by John P. Moneyhun against the Union Trac-

tion Company of Indiana. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1394, cl. 2, Burns 1914, Acts 1901 p. 565.) *Affirmed.*

*J. A. Van Osdol* and *Kittinger & Diven,* for appellant.
*Ellison & Neff, Beckett & Beckett* and *William S. Elliott,* for appellee.
*W. H. Latta, M. E. Foley* and *D. E. Watson, Amica Curiae.*

TRAVIS, J.—Appellee sued for damages for personal injuries and injuries to property inflicted by the appellant. A statement of facts deemed sufficient for an understanding of the application of the legal doctrines invoked is as follows:

Appellant operated a single track interurban railway along and upon one of the principal public streets of a city. Appellee was driving south along a street that crossed the street upon which the railway was located, at right angles. The street occupied by the railway had been paved on either side of the track in the fall, just prior to the approach of winter, and the space between the rails of the track and on one foot on the outside of either rail was left unpaved, and the railway track and its bed were in the original position, which was about twelve inches above the surface of the new pavement. The injury was inflicted in December. To afford a means for vehicles to cross the railway track upon this street intersection, appellant had made an approach of dirt, sand and gravel on either side of the track from the pavement to the rail. The streets forming the intersection lay with the main points of the compass; east and west, and north and south. The improved part of the street in which appellant's track was located, was thirty feet in width between curb lines with a parkway between the curb and the sidewalk on

either side of the street.    Upon the lot forming the northeast corner intersection of the streets was located a church forty feet wide north and south by sixty feet in length east and west.    To the north and to the east of the church the view, easterly by south, was unobstructed by buildings or fences.

Appellee plaintiff was a man seventy years of age, with good sight and hearing, and drove his own automobile, which had three speeds forward and was of the runabout type of body.    At the time of the accident he was on his way home from a trip to the city with some produce, which he delivered to a grocery, situated two blocks north of this street intersection.    When he started home from the grocery the body of his automobile was enclosed with side curtains, and he drove the first block south from the grocery with the speed lever set in first gear.    He changed the speed lever to second gear in the second block (which is the first block north of the railway), and was then going between five and six miles per hour; and while going the second block before reaching the church he continued to watch for a street car past the southwest corner of the church until after he had passed the church, and when he could see down the cross street east, and not seeing any car he then looked to the west, to see if a car was approaching from that direction, and seeing none approaching, and being then about upon a line with the north curb of the street, he put his foot upon the accelerator to give his automobile more power and speed to mount the incline to pass over the street car track, which gave him a speed of about eight or nine miles an hour, but just as he had so accelerated the power and speed of his automobile he again looked to the east, when he saw a street car very close to him, and he then threw out the clutch and applied the brakes, but before he could stop the front wheels of his automobile were upon the track,

when the collision occurred. The automobile was thrown and pushed by the collision to the northwest, over the curb and across the sidewalk, where it stopped. Appellee was not thrown out of his car, but was taken out by people who first reached him. He crossed this intersection frequently, and knew the conditions of street and track, and surrounding conditions.

The street car, as it bore down upon appellee from the east, was traveling at a rate between twenty-five and thirty miles per hour, in spite of an ordinance of the city limiting the speed of electric cars to twelve miles per hour; and without the sounding of gong or other alarm; and, as testified to by the motorman as witness for appellant, he did not have the car under control, although the brakes of the street car were not defective.

The affirmative side of the case was based upon two paragraphs of complaint, the first for personal injuries, and the second for injuries to his automobile, both of which paragraphs were based upon the alleged negligence of appellant negligently permitting to remain on each side of the track an embankment of six inches; in operating the car at a speed of twenty-five miles per hour in violation of the ordinance of the city limiting the speed of electric cars to twelve miles per hour; and in failing to sound the gong on the car, or give any other alarm, and without any negligence contributing thereto. The issue formed by the general denial of the appellant was, under the instruction of the court decided by a jury, in favor of the appellee.

The appellant filed its motion for a new trial for the reasons: that the verdict is not sustained by sufficient evidence and is contrary to law; and in giving to the jury two instructions complained of, numbered 10½ and 13; and in refusing to give three instructions tendered which were numbered 37, 38 and 39; and which motion was overruled and error assigned upon such ruling.

Instruction No. 37, refused by the trial court, is based upon an assumed legal presumption, that a person is charged with having seen what he might have seen had he looked, and with having heard what he might have heard, had he listened; and in the event such person is injured, negligence is imputed to him. This cannot be the law of this case. If appellee had seen the approaching car when at such a distance from the crossing that it might easily have been stopped had it been moving at a lawful rate, he might have been able to have crossed the track in safety, or the car could have been stopped. At any rate the street railway company had no superior right to cross this crossing in preference to individuals in vehicles, except that the street car cannot turn from the track to accommodate those about to cross its track. Had the vital part of this instruction been properly qualified, it might have been given to the jury; except that the essence of this instruction was covered by instruction No. 32, given at the request of appellant, and instruction No. 9 upon the court's own motion.

Instruction No. 38 is a garbled quotation from the case of *McGee* v. *Consolidated St. R. Co.* (1894), 102 Mich. 107, 115, 60 N. W. 293, 295, 26 L. R. A. 300, 47 Am. St. 507. The instruction is as follows: "In this state, the law is laid down as well settled that the persons passing on or crossing railroad crossings must exercise care. They must look and listen and under certain circumstances, must stop before attempting to cross. Electric street car crossings are also places of danger; the cars are run at a great speed in a street and the rule must be, before coming upon such tracks every person is bound to look and listen."

The language of the McGee case, *supra*, from which the instruction was taken, is as follows: "In this State

it is well settled that persons passing over railroad crossings must exercise care. They must look and listen, and, under certain circumstances, must stop, before attempting the crossing. Electric streetcar crossings are also places of danger. The cars are run at a great speed on this street in question. The city ordinance permits it, and the rule must be that, before going upon such tracks, every person is bound to look and listen."

The language in the opinion of the McGee case, *supra,* which precedes that part last quoted is as follows: "We see no more reason for applying the rule that one must look and listen before crossing the tracks of a steam railway than that one must look and listen before crossing a streetcar track upon which the motive power is electricity or the cable." This is not the law of this state. The duty to look or listen, or both, and to stop in order to use these senses, before crossing the right of way of a steam railroad is not the rule, which governs the right of pedestrians and those riding in or driving vehicles when approaching, or crossing the tracks of a street railroad, at a public street intersection. The duty of such persons is no higher or different in law from the duty of the company which operates the street car, except that the street car is confined to its track. *Duetz* v. *Louisville, etc., Traction Co.* (1910), 46 Ind. App. 692, 91 N. E. 622; *Kelly* v. *Railroad Co.* (1900), 175 Mass. 331, 56 N. E. 285; *Fairbanks* v. *Bangor, etc., Co.* (1901), 95 Me. 78, 49 Atl. 421; *Consolidated Trac. Co.* v. *Scott* (1896), 58 N. J. Law 682, 34 Atl. 1094, 34 L. R. A. 122, 55 Am. St. 620.

This instruction was not applicable to this case, by which to determine whether or not appellee contributed to his injury by his own negligence.

Instruction No. 39, tendered by appellant and refused, is as follows: "Ordinary care of a person approaching a railroad track is such care as an ordinary person

of prudence exercises under the circumstances 4. of danger to be apprehended. The greater the danger, the higher the degree of care that is required by the person so approaching said railroad track to constitute ordinary care, and absence of such degree of care, whether there is any danger by obstruction or otherwise, is negligence." The second sentence refers to degrees of care. The use of the words and phrases in this sentence in such relation are misleading, as has been heretofore held by this court in the case of *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737, but a more fatal objection to this instruction is that it fails to fit the facts in this case as disclosed by the evidence. The track was single, in the open street. The appellee looked both ways to see an approaching car. He was not charged with "apprehending" the speed of the car that struck him, neither that the motorman had lost control of it, nor that such motorman would fail to give any signal of the approach of the car. However, the court did give instruction No. 17, at the request of appellant which sufficiently covers instruction No. 39.

Appellant objects to instruction No. 10½, because it states that the driver of an automobile is not required to stop, look, and listen before crossing a street 5, 6. railway track within a city, and maintains that such an instruction is peremptory in favor of the plaintiff. The contention brings into question the care and prudence necessary in approaching and crossing a steam railroad track outside of a city, and applying it to one who approaches and is about to cross a street railway track upon and at a public street crossing within a city. The evidence was sufficient to establish the fact that appellee looked both ways for approaching cars after passing the church, and to the east before passing the church, and listened, and neither saw nor

heard the approaching car until a moment or two before the accident, when it was too late to avoid the collision. To be sure, there is no evidence to show that he stopped just prior to entering upon the track, but as a matter of law that point is well settled and need not be discussed in this opinion. *Indianapolis St. R. Co.* v. *Schmidt* (1904), 35 Ind. App. 202, 71 N. E. 663, 72 N. E. 478; *Indianapolis St. R. Co.* v. *O'Donnell* (1905), 35 Ind. App. 312, 73 N. E. 163, 74 N. E. 253; *Duetz* v. *Louisville, etc., Traction Co., supra.* Appellant also insists that this instruction is erroneous because it said "the appellee was not bound to look at an especially given place to see if a street car was approaching." The correctness of this statement is sufficiently evident. It would be impossible to lay down a rule that one about to cross a street railway track upon a public street in a city must first look to the east when a given distance from the track, and west when another given distance from the track. Why would not action *vice versa* do just as well? To make a rule establishing a place in which one shall look before crossing a railroad track would completely absolve anyone who might be injured on account of a failure to see, by using ordinary prudence and care in any case. No two cases for damages, for injuries received in a manner similar to the facts in this case, have ever been exactly alike; and there never will be two cases where all the setting in the one case, is exactly like the setting in the other. The rule of law could not be otherwise, than to leave it to the judgment of the one about to cross the track to look for approaching cars and for approaching teams, to his right and left, and in front of him, and for pedestrians; paying especial care to the matter of approaching street cars, and give careful attention as to whether or not approaching cars are coming from either direction; but to look for the cars when he is not looking for some other

danger, either to himself, or to others who might come in his path. He shall exercise ordinary care and prudence commensurate with all the circumstances of the case, in approaching the crossing and attempting to cross the same; which rule of law will be found stated in this instruction.

Instruction No. 13, given to the jury over appellant's objection is as follows: "A traveler approaching a street railway track, at the crossing of public streets in a city, is not bound to stop, look or listen for the approach of cars upon such track. Such traveler is bound, however, to exercise and use ordinary care under the circumstances for his own safety, and to make reasonable use of his senses of sight and hearing in determining and detecting such dangers as are incident to the use of the streets and street car tracks, under the circumstances; and if the traveler upon the street fails in such duty, and receives an injury which is contributed to proximately by such failure on his part, he can not be heard to complain of the negligence of another who contributed to such injury; and the degree of care which a person is required to use to detect and avoid danger in the use of a public street, and the degree of care which a company is required to use in operating its cars on the public streets, and approaching and going over intersections, is that degree of care which might reasonably be expected of a person of ordinary prudence, under similar or like circumstances and conditions." Appellant's objection is directed to the first sentence only. Taken by itself, in the abstract and unqualified, this sentence is objectionable. The remainder of the instruction is directed to this first sentence as qualifying it, and correctly states the rule concerning the use of the senses of sight and hearing in the exercise of ordinary care.

Concerning the use of the disjunctive *or* in the first

sentence of the instruction, such may have been prompted by language in opinions of courts, as for example, in the case of *Dennis* v. *North Jersey Street R. Co.* (1900), 64 N. J. Law 439, 441, 45 Atl. 807, 808, the opinion reads: "The plaintiff was not bound, as matter of law, to stop, look or listen for the approach of a car before going over the crossing." and cases cited. In the case of *Lewis* v. *Cincinnati St. R. Co.* (1900), 10 Ohio Decisions 53, the opinion reads: "That no absolute rule could be laid down requiring one driving along a street upon which were street car tracks to either stop or look or listen before crossing over the track, or to look once or more times before going upon the tracks to ascertain whether or not a car operated by electricity might bring about a collision." In the case of *Smallwood* v. *Boston Elevated Railway* (1914), 217 Mass. 375, 377, 104 N. E. 748, the opinion reads: "It is undoubtedly true that there is no absolute rule which requires a person, who is about to cross a street railway track, under all circumstances to look or listen for the approach of a car; yet in a given case due care may require it."

In Indiana, in 1876, this court in its opinion in the case of *Indianapolis & St. Louis R. Co.* v. *Stout, Admr.* (1876), 53 Ind. 143, 149, quoted with approval from *Cleveland, etc., R. Co.* v. *Crawford* (1874), 24 Ohio St. 631, concerning the use of the senses of sight and hearing before crossing the track of a railroad at a highway crossing, the following language: "Nor will the failure to use such precautions be regarded as negligence on the part of the plaintiff, if, under all the circumstances of the case, a person of ordinary care and prudence would be justified in omitting to use them."

So, as a matter of law, it may be said, that there is no absolute rule of law which requires a person who is about to cross a street railway track upon a public high-

way crossing in a city, under all circumstances, to look or listen, or to stop, look or listen, for the approach of a car upon such track.

The question is, whether such failure to so stop, look or listen, was an exercise of reasonable care by the one who received the injury. This is the precise question which is for the jury to determine; and it may be, that under a given set of circumstances, due care may require one to look and listen, or to stop for the purpose of exercising either one or both of these senses, to ascertain the impending danger. It is one thing to state an abstract legal doctrine in an opinion by the court, and quite another to incorporate that same language, unqualified, in an instruction to a jury. The sentence to which objection is made is disapproved, but as it is here qualified and explained, the jury could not have misunderstood it.

It is now the well recognized rule of law in this state, as well as of most of the other states, that the absolute stop, look, and listen rule, as formerly applied to

8. a public highway crossing with a steam railway, does not apply to street railway crossings in cities. *Indianapolis St. R. Co.* v. *Schmidt, supra; Citizens St. R. Co.* v. *Damm* (1900), 25 Ind. App. 511, 517, 58 N. E. 564; *Richmond Passenger, etc., Co.* v. *Gordon* (1904), 102 Va. 498, 46 S. E. 772; *Marden* v. *Portsmouth, etc., St. Railway* (1905), 100 Me. 41, 60 Atl. 530, 69 L. R. A. 300, 109 Am. St. 476; *Dunican* v. *Union R. Co.* (1899), 39 App. Div. 497, 57 N. Y. Supp. 326; *Smallwood* v. *Boston Elevated Railway, supra.*

The evidence is sufficient to sustain the verdict, and the verdict is not contrary to law.

Judgment affirmed.